UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YINTAO YU,<br><br>    Plaintiff,<br><br>    v.<br><br>BYTEDANCE INC., *et al.*,<br><br>    Defendants. | Case No. 23-cv-03503-SI<br>Related Case No. 23-cv-707 SI<br><br>**ORDER DISMISSING PREEMPTED CLAIMS AND GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING OTHER PENDING MOTIONS AS MOOT**<br><br>Re: Dkt. No. 22 |

On September 1, 2023, the Court held a hearing on plaintiff Yintao Yu's motion to remand. For the reasons set forth below, the Court concludes that a portion of the first cause of action is preempted by the federal Copyright Act and thus defendants' removal of this case was proper. The Court DISMISSES the first cause of action to the extent it is preempted. At the hearing, plaintiff's counsel stated that Yu did not intend to amend the complaint to assert a federal copyright claim. Pursuant to 28 U.S.C. § 1367(c)(3), the Court exercises its discretion and declines supplemental jurisdiction over the remaining purely state law causes of action and REMANDS this case to the Superior Court for the County of San Francisco.

**BACKGROUND**

The following allegations are taking from the first amended complaint ("FAC"), which was filed on May 12, 2023, in the Superior Court for the County of San Francisco. Dkt. No. 1-4 (FAC). Plaintiff Yintao Yu was the head of engineering of the U.S. offices of defendant ByteDance, Inc.

from August 2017 until his termination in November 2018. *Id.* ¶ 2. ByteDance Inc. is a Delaware corporation with its principal place of business in San Francisco County, and it is a wholly owned subsidiary of ByteDance Ltd., a privately held corporation. *Id.* ¶ 3 & Dkt. No. 4 (ByteDance's Corporate Disclosure Statement). ByteDance Ltd. is a Chinese internet technology company that develops social networking apps such as TikTok.

Yu claims,

> Shortly after beginning his employment, Mr. Yu became aware that ByteDance had for years engaged in a worldwide scheme (including in California) to steal and profit from the content of others. The effort involved the use of software purposely unleashed to systematically strip user content from competitor's websites — chiefly, Instagram and Snapchat — and populate its own video services with these videos in an effort to make its own services appear more popular to end users. These actions were taken without the permission of the content creators and represented an unlawful effort to gain an edge against entrenched online video hosting websites.
>
> Specifically, ByteDance developed software that would scrape content posted by end users on competitors' websites without permission, and upon information and belief, in violation of the competitors' terms of use. ByteDance would then post the misappropriated content on its own websites via fake social media accounts to attract greater engagement with those accounts, and by extension, ByteDance's websites.
>
> The content ByteDance scraped from its competitors had been posted by users of those competitors' websites. ByteDance's software used to scrape the users' content did not ask the users for their permission.

FAC ¶¶ 10-12. The parties refer to this alleged scheme as the "scraping" scheme.

Yu alleges that around the same time that he discovered the scraping scheme, he also discovered that ByteDance was systematically creating fabricated users to exaggerate its metrics in order to draw in potential investors. *Id.* ¶ 21. The parties refer to this alleged scheme as the "bot" scheme. According to Yu,

> ByteDance programmed the fabricated users to "like" and "follow" real user accounts. The fake "likes," "follows" and similar fabrications would trigger push notifications to real users that would entice the users back to ByteDance's applications, thereby boosting many engagement metrics including user retention rate, which is one of the key metrics relied on by potential investors.

*Id.* ¶ 22.

Yu alleges that he believed that the schemes were unethical, unlawful, and fraudulent, and he repeatedly raised his concerns about both practices to his manager, Wenjia Zhu, who was formerly the Senior VP of Engineering and current Global TikTok R&D Chief at ByteDance. *Id.*

2

¶¶ 13, 24. According to Yu, Zhu was dismissive of his concerns, and both practices continued. *Id*. Yu also claims that he observed a general "culture of lawlessness" within ByteDance that "focused on growth at all costs," and he alleges that the Chinese government had a special office in ByteDance that "guided how the company advanced core Communist values" and "regulated and monitored the company." *Id*. ¶ 32.

Around December 2017, Yu learned of efforts to terminate a U.S. based employee who suffered from depression. *Id*. ¶ 25. Yu believed that these efforts, which included management changing the employee's performance ratings in order to justify a termination despite "demonstrably strong performance," were illegal and he interceded on behalf of the employee. *Id*. Yu was told by a manager that the employee's performance rating had been downgraded because the manager did not like the employee taking time off to address her depression and that the manager viewed the employee "as a 'burden' she 'wanted to get rid of.'" *Id.* Yu alleges on information and belief that defendant Shuyi (Selene) Gao, who was the head of Human Resources, helped to develop the strategy to "mask the illegal motivation and plan for terminating" the employee. *Id.* Yu's interventions were viewed as "problematic" by other managers, including Nan Zhang, who later became the general manager of ByteDance's entire video division, the department in which Yu worked. *Id*. ¶ 26. Yu alleges that Zhang "was in a position to retaliate against Mr. Yu for his actions." *Id*.

Around March 2018, Yu "was required to take his own medical leave for approximately seven months." *Id*. ¶ 34. On July 18, 2018, Yu mailed three letters to various supervisors notifying them that, in consultation with his doctor, he expected to be able to return to work on September 11, 2018. *Id*. Yu alleges that ByteDance "claims to have mailed Mr. Yu a notice of termination on July 26, 2018, purportedly due to a reduction in force," and that ByteDance "claims that on July 27, ByteDance e-mailed Mr. Yu and copy of the termination notice," but that Yu never received any of these notices and that no one at ByteDance called him to notify him of the termination. *Id*.

In October 2018, Yu was cleared to return to work by his doctor. *Id*. ¶ 35. When Yu returned to work, "he was told he did not 'need to come to work now' and that the company 'will contact you later.'" *Id*. Yu remained on the ByteDance payroll through November 2018. *Id*.

The FAC alleges nine causes of action under California law: (1) Unfair Business Practices – Public Injunction; (2) Retaliation under Cal. Lab. Code § 1102.5; (3) Failure to Prevent Disability Discrimination under California's Fair Employment and Housing Act ("FEHA"); (4) Retaliation under FEHA; (5) Breach of Contract; (6) Breach of the Covenant of Good Faith and Fair Dealing; (7) Wrongful Termination in Violation of Public Policy; (8) Unfair Business Practices – Restitution; and (9) Failure to Pay All Wages Due on Termination. Yu alleges all causes of action against ByteDance and causes of action eight (Unfair Business Practices – Restitution) and nine (Failure to Pay All Wages Due on Termination) against Gao.

On July 13, 2023, defendants removed this case to this Court, asserting that the first cause of action for unfair business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, is preempted by the Copyright Act and provides a basis for federal jurisdiction.[1] Now before the Court is Yu's motion to remand this case to state court.

**LEGAL STANDARD**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court. 28 U.S.C. § 1441(a). There are two bases for federal subject-matter jurisdiction: (1) federal-question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.

A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject-matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand *sua sponte* or on motion of a party, and the party who invoked the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *See Enrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in favor of remand. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) (citations omitted). Any doubt as to the right of removal must be

---

[1] The notice of removal states that defendants were served with the FAC on June 30, 2023, and July 3, 2023, and thus removal was timely.

resolved in favor of remand to state court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

**DISCUSSION**

Yu moves for remand, arguing that the FAC alleges purely state law claims and that there is no basis for federal jurisdiction. "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). That rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. . . . The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* (internal citation omitted). A corollary to this rule, known as the complete preemption doctrine, provides that "Congress may so completely preempt a particular area that a civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 63-64 (1987). "In such a case, even if the only claim in a complaint is a state law claim, if that claim is one that is 'completely preempted' by federal law, federal subject matter jurisdiction exists and removal is appropriate." *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (citing *Metropolitan Life Ins.*, 481 U.S. at 63-64).

Defendants contend that the first cause of action seeking a public injunction under the UCL is completely preempted by the Copyright Act. That cause of action incorporates the previous allegations and alleges,

> California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., prohibits any unlawful, unfair or fraudulent business practices. Under the UCL, any person who engages, has engaged, or purposes to engage in unfair competition may be enjoined.
>
> By scraping the content belonging to individuals who reside in California, including social media content that Plaintiff posted on his own Instagram profile, and by subsequently posting that content on Defendant's websites without the content creators' consent, Defendant engaged in unlawful, unfair, or fraudulent business practices. Plaintiff is entitled to a public injunction to stop Defendant from scraping social media content belonging to residents of California.
>
> ByteDance also engaged in unlawful, unfair, or fraudulent conduct by systematically creating fabricated users to "like" and "follow" real user accounts, including Plaintiff's TikTok account, triggering push notifications that would entice users back to ByteDance's apps. By doing this, ByteDance artificially exaggerated key

engagement metrics, which potential investors consider when investing in social media platforms.

Defendant's violations of the UCL continue to this day. As a direct and proximate result of Defendant's violation of the UCL, Plaintiff has suffered actual damage.

Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein.

FAC ¶¶ 42-46. Pursuant to the first cause of action, Yu seeks,

A public injunction prohibiting ByteDance from continuing to engage, use, or employ the unlawful, unfair, and fraudulent practice of scraping content produced by individuals residing in California from its competitors' websites and posting that content on Defendant's websites without the consent of the owners of that content. ByteDance also should be enjoined from fabricating users and from using fabricated user accounts to create fake engagement and push notifications.

*Id*. Prayer for Relief ¶ 1.

"The Copyright Act explicitly preempts state laws that regulate in the area of copyright, stating that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . are governed exclusively by this title." *Sybersound Recs., Inc. v. UAV Corp*., 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting 17 U.S.C. § 301(a)).[2] "Copyright law does not preempt state laws with respect to 'activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.'" *Id*. (quoting § 301(b)(3)). "Under the Ninth Circuit's two-part test for determining whether a state law claim is preempted by the Copyright Act, the court 'consider[s] whether (1) the work at issue falls within the scope of copyright subject matter, and (2)

---

[2] Although the Ninth Circuit has analyzed whether state law claims are preempted under the Copyright Act, it has not addressed whether copyright preemption is "complete" such that it provides a ground for removal on the basis of federal question jurisdiction. However, numerous district courts within the Ninth Circuit have held that the Copyright Act "qualifies as a unique preemptive statute," *see, e.g.*, *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1121-23 (N.D. Cal. 2001) (collecting cases), and other circuit courts have so held. *See, e.g., GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) (concluding the Copyright Act "completely preempts the substantive field" and thus "transforms a state-law complaint asserting claims that are preempted . . . into . . . a federal claim for purposes of the well-pleaded complaint rule" (alterations added; quotation marks and citation omitted)); *Ritchie v. Williams*, 395 F.3d 283, 286–87 (6th Cir. 2005) (finding the complete preemption doctrine applies to the Copyright Act); *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (same); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232–33 (4th Cir. 1993) ("The grant of exclusive jurisdiction to the federal district courts over civil actions arising under the Copyright Act, combined with the preemptive force of [section] 301(a), compels the conclusion that Congress intended that state-law actions preempted by [section] 301(a) of the Copyright Act arise under federal law."). The Court agrees with the reasoning of these decisions.

the law at issue grants rights equivalent to any of the exclusive rights within the scope of copyright.'" *Laatz v. Zazzle, Inc.*, __ F. Supp. 3d __, No. 22-CV-04844-BLF, 2023 WL 4600432, at *8 (N.D. Cal. July 17, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015)). "To survive preemption, the state cause of action must protect rights that are qualitatively different from the rights protected by copyright: the complaint must allege an 'extra element' that changes the nature of the action." *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004); *see, e.g.*, *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989) (holding fraud claim was not preempted because "misrepresentation is a necessary element of any fraud claim" and "[t]his is not substantially equivalent to a claim for copyright infringement.").

ByteDance contends that Yu's UCL scraping theory meets both prongs of the test because (1) online videos fall within the subject matter of the Copyright Act as "other audiovisual works" under 17 U.S.C. § 102(a)(6); and (2) a claim based on the alleged scraping and reproduction of online videos without owner consent seeks to vindicate reproduction and display rights equivalent to those under 17 U.S.C. § 106(1) and (3).[3] ByteDance argues that to the extent Yu seeks to use the UCL to enjoin future instances of this alleged unauthorized scraping and reproduction his claim is completely preempted because that injunctive relief is available under the Copyright Act.

Yu's reply brief only addresses the second prong of the test, effectively conceding that online videos fall within the subject matter of the Copyright Act. As to the second prong, Yu argues that his UCL claim is based on both the scaping scheme and the bot scheme, and he notes that ByteDance does not contend that the bot scheme allegations are preempted. As to the scraping scheme, Yu argues that those allegations are fundamentally about unfair competition, not copyright infringement, because he alleges that ByteDance used the scraping scheme "to appear more popular to end users" and "to gain an edge against entrenched online video hosting websites," FAC ¶ 10, and he alleges that ByteDance scraped content from other websites "in violation of the competitors'

---

[3] Section 106, titled "Exclusive rights in copyrighted works," provides in relevant part, "Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords . . . (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . ." 17 U.S.C. § 106.

7

terms of use" – allegations that do not depend on a finding of copyright infringement. *Id*. ¶ 11.[4]

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Unlawful acts are 'anything that can properly be called a business practice and that at the same time is forbidden by law . . . be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made,' where court-made law is, 'for example a violation of a prior court order.'" *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008) (internal citations omitted). "Unfair acts among competitors means 'conduct that threatens an incipient violation of an antitrust law, or violates the spirit or policy of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Id.* at 1152 (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999)). "Finally, fraudulent acts are ones where members of the public are likely to be deceived." *Id.* "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). "A determination of whether the Copyright Act preempts a UCL claim 'requires analysis of each theory of unfair competition to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright . . . protection.'" *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1074 (N.D. Cal. 2016) (quoting *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993)).

The first cause of action alleges that the scraping and bot schemes are unlawful, unfair and fraudulent, without specifying how the schemes are unlawful. FAC ¶¶ 43-44. The Court concludes that to the extent the first cause of action is premised on allegations that ByteDance scraped "social

---

[4] Yu also argues that the scraping scheme was in violation of ByteDance's "Community Guidelines," which are incorporated into its Terms of Service, because the Community Guidelines state that "Authentic engagement is central to the integrity of our platform . . . . We do not allow the trade of services that attempt to artificially increase engagement . . . ." and that "[TikTok] want[s] everyone to feel confident that they can access information that is reliable, discover content that is original, and engage with people who are authentic." Dorenbaum Decl. Ex. C (Dkt. No. 18-4). Those allegations are not in the FAC, and thus the Court does not consider them for purposes of the present motion. Similarly, because the Court's review is limited to the FAC, the Court does not consider the allegations of Yu's earlier complaints when evaluating whether Yu's claims are preempted.

1  media content [videos, FAC ¶ 10] that Plaintiff posted on his own Instagram profile" and
2  subsequently posted that content on ByteDance's websites without Yu's consent, that claim is
3  preempted by the Copyright Act.[5]  On the first prong on the preemption test, the Court agrees with
4  ByteDance that online videos fall within the subject matter of the Copyright Act as "other
5  audiovisual works" under 17 U.S.C. § 102(a)(6).  As other courts have noted, whether any particular
6  work is copyrighted is irrelevant because "the issue for the purpose of a preemption analysis is
7  whether the work involved is a kind of work that comes within the subject matter of the Copyright
8  Act." *Firoozye*, 153 F. Supp. 2d at 1125.

9  On the second prong of the preemption test, a claim that ByteDance is scraping Yu's video
10 content from his Instagram account and reproducing that content on its own websites without Yu's
11 consent seeks to vindicate rights that are equivalent to those protected by section 106 of the
12 Copyright Act.  Section 106 grants the owner of a copyrighted work "exclusive rights" to reproduce
13 the work, prepare derivative works, distribute copies of the work to the public, and to perform or
14 display the work publicly.  *See* 17 U.S.C. § 106.  Thus, to the extent that the first cause of action
15 alleges that ByteDance violated Yu's rights to reproduce and distribute his own online videos, that
16 claim is equivalent to an action for copyright infringement.  *See Del Madera Properties v. Rhodes*
17 *& Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (overruled on other grounds) (holding UCL
18 claim alleging misappropriation of time and effort in creating copyrighted material was preempted
19 where "Del Madera's ownership of this material, and the alleged misappropriation by the
20 defendants, are part and parcel of the copyright claim").

21 However, the Court concludes that the balance of the first cause of action – specifically the
22 allegations about the bot scheme and the allegations that ByteDance scrapes content from competitor
23 websites in violation of those competitors' terms of use – is not preempted because those allegations
24 do not assert rights equivalent to an action for copyright infringement.  As to the allegations that

---

[5] Assuming Yu obtained a copyright for his online videos, he would only have standing to sue for copyright infringement of his own videos, and he could not assert copyright infringement claims based on the alleged scraping and reproduction of other individuals' online videos.  *See Sybersound Records*, 517 F.3d at 1150 ("The exclusive rights of copyright owners granted by Congress under § 106 of the Copyright Act may only be enforced by an owner or exclusive licensee of the right[.]").

1    ByteDance scrapes content in violation of competitors' terms of use, those allegations do not depend
2    on any finding of ownership or infringement, but rather whether the alleged scraping does in fact
3    violate the competitors' terms of use, and in turn, whether that practice (combined with the alleged
4    bot scheme), violates the UCL because it allowed ByteDance to inflate its engagement metrics and
5    therefore make its services appear more popular to end users and attract investment. The FAC
6    alleges that ByteDance's bot scheme is fraudulent because the inflated engagement metric data was
7    provided to investors and lenders, FAC ¶ 24, and that allegation is incorporated into the first cause
8    of action. That theory involves the additional element of fraud or misrepresentation that is not a
9    part of a copyright claim. *See Firoozye*, 153 F. Supp. 2d at 1131 (holding UCL claim preempted to
10   the extent it was based on preempted conversion claim, but not preempted to the extent it was based
11   on misrepresentation and misappropriation of trade secrets claims).[6]

12   Accordingly, the Court DISMISSES the first cause of action to the extent Yu alleges that
13   ByteDance scraped his online videos from his Instagram account and reproduced those videos
14   without his permission, as those claims are preempted. At oral argument, plaintiff's counsel stated
15   that Yu will not seek to amend his complaint to convert his preempted state-law claim into a federal
16   copyright claim. As a result, the complaint as of the date of this Order only includes state-law causes
17   of action, and the Court declines to exercise supplemental jurisdiction over the remaining purely
18   state-law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the plaintiff's motion to remand is
19   GRANTED. *See Firoozye*, 153 F. Supp. 2d at 1132-33 (dismissing preempted state law claims and
20   granting the plaintiff's motion to remand). The FAC — with the dismissal of the preempted claims
21   in the first cause of action —shall be REMANDED to the Superior Court for the County of San
22   Francisco.

23   In its discretion, the Court declines to award attorneys' fees and costs to Yu under 28 U.S.C.
24   § 1447(c), as ByteDance had "an objectively reasonable basis for seeking removal." *See Martin v.*
25   *Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

---

[6] The Court makes no finding as to whether, with the dismissal of the preempted allegations, Yu has standing to assert the UCL claim or whether the remaining allegations in fact state a claim under the UCL. The Court's holding is limited to analyzing what claims in the first cause of action are preempted by the Copyright Act.

**CONCLUSION**

The Court DISMISSES the first cause of action to the extent that claim is preempted by the Copyright Act, DECLINES supplemental jurisdiction over the remaining purely state law claims, and REMANDS this case to the Superior Court for the County of San Francisco. All other pending motions are DENIED AS MOOT.

**IT IS SO ORDERED**.

Dated: September 1, 2023

SUSAN ILLSTON
United States District Judge